BEA, J.,
dissenting:
The majority misunderstands California law and thereby ignores the plain meaning of the insurance contract to which it purports to give effect. I dissent.
I agree with the majority that the “services” exclusion covers a broad range of acts and transactions. I also agree that “breadth of meaning does not equal ambiguity.” Op. at 926. And, California recognizes that a broad term is often used because a broad meaning is intended. Bay Cities Paving & Grading, Inc. v. Lawyers’ Mut. Ins. Co., 5 Cal.4th 854, 865, 21 Cal. Rptr.2d 691, 855 P.2d 1263 (Cal.1993). I disagree with the majority, however, on two points.
First, the majority construes the “services” exclusion narrowly because the third-party complaint alleged “the kind of breaches of duty and misstatements that are generally covered by the policy.” Mem. Dispo. at 3. But, defining the scope of an insurance policy exclusion by determining what risks should be covered under the grant of coverage is a nonsense. An exclusion of coverage cannot obtain unless there is coverage of the risk. If a finding of coverage eliminates an exclusion, the exclusion is illusory. For example, a baseball team might buy a special “Tommy John” surgery medical insurance policy the coverage of which extends to “all pitchers,” subject to an exclusion: “No lefthanded pitchers shall be covered.” The majority’s reasoning would require that a southpaw pitcher be covered because all pitchers are “generally covered by the policy.” In other words, the majority interprets exclusions as unambiguous only if they are superfluous, which is hardly the law of California.[1] Further, textually, the majority’s interpretation to narrow the “services” exclusion so not to cover “sales” is a mistake under California law.[2] *928 If a term has only one meaning, it should be given that meaning, not “construed” as narrower than it is. MacKinnon v. Truck Ins. Exch., 31 Cal.4th 635, 3 Cal.Rptr.3d 228, 73 P.3d 1205, 1213 (2003).
Second, the majority argues that the third-party complaint alleges breaches of duty through misstatements in connection with “sales,” not “services,”; thus, there is ambiguity as to whether the exclusion applies to the claims of misrepresentations made by the buyer in the sale of McMil-lin’s property. However, the record unambiguously establishes that McMillin was sued by Mann for statements McMillin made (and disclosures it failed to make) in connection with its rendering of broker services to Mann. ER 219-318. The third-party complaint states that Corky McMil-lin was the “real estate broker” for McMil-lin in the home sales at issue, and that Corky McMillin “marketed the 349 homes [] utilizing sales personnel, sales brochures, fliers, maps, models, and other forms of advertising media.” ER 301-02. California law states that “a person acts as a broker only if he or she is acting (1) for compensation and (2) on behalf of someone else.” Horning v. Shilberg, 130 Cal.App.4th 197, 204, 29 Cal.Rptr.3d 717 (Cal.App.4th.2005) (internal citations omitted). Even if representations made in the sale of homes, standing alone, would not constitute “services,” the specific allegation here is of misrepresentation as part of the brokering services rendered by insured Corky McMillin to the third party plaintiffs in the sale of homes. Thus, the E & O exclusion for “services” unambiguously applies.
Moreover, the alleged breaches of duty and misstatements were not irrelevant to or separable from the rendering of broker services. In California, an essential part of a broker’s fiduciary duty to prospective purchasers of resident real estate property is to “conduct a reasonably competent and diligent visual inspection of the property offered for sale and to disclose to that prospective purchaser all facts materially affecting the value or desirability of the property that an investigation would reveal.” Cal. Civil § 2079. Thus, California courts have held that the buyer of real estate is entitled to rely on the seller’s broker’s representations, because the making of those representations is intrinsic to the broker’s services. See, e.g., Furla v. Jon Douglas Co., 65 Cal.App.4th 1069, 76 Cal.Rptr.2d 911 (Cal.Ct.App.1998)[3].
Applying California law, therefore, and without relying on extrinsic evidence, I would hold that because the third-party complaint stated allegations of misrepresentations by McMillin in rendering of broker services to the third-party plaintiffs, the E & O Exclusion unambiguously excludes this claim from coverage. Because I would hold that U.S. Specialty had no duty to defend against this claim, I would *929 not reach the question whether McMillin correctly tendered defense of the claim to U.S. Specialty. I respectfully dissent.

. For example, in Jon Davler, Inc. v. Arch Insurance Company, 229 Cal.App.4th 1025, 178 Cal.Rptr.3d 502 (Cal.Ct.App.2014), Dav-ler brought an insurance coverage action against its insurer, Arch. Davler, a cosmetics company, employed a manager, Yang. When Yang found a used sanitary napkin near the women's toilet, she forced every female employee to undergo inspection to determine if they were on their menstrual period and the possible source of the napkin. Id. at 1029, 178 Cal.Rptr.3d 502. Some of the female employees brought a false imprisonment and sexual harassment suit against Davler and Yang. Id. Davler tendered defense to Arch under its commercial general liability policy, which had a coverage provision extending to injuries "arising out of” "false arrest, detention, or imprisonment.” Id. at 1030, 178 Cal.Rptr.3d 502. However, the policy included an employment related practices exclusion for claims "arising out of” "employment-related practices, policies, acts or omissions.” Id. Arch refused to defend the employee suit, citing the exclusion, and Davler filed a breach of contract action in California court. The trial court sustained Arch’s demurrer, stating that the claims in the employee suit fell within the exclusion. On appeal, the California Court of Appeal affirmed, holding that the exclusion unambiguously applied to the employee action. The California Court of Appeal specifically rejected Davler’s argument that there was ambiguity in the "structure of the policy as a whole” because of the broad grant of coverage, instead holding that the unambiguous language of the exclusion should be given effect. Id. at 1036-39, 178 Cal.Rptr.3d 502.

. That goods are sold the customer does not mean that services necessary and integral to the sale were not rendered. When a custom *928 er buys a cup of coffee, the waiter's services are part of the sale. The receipt lists the coffee (the asset sold) and has a space for the tip (the service).

. Furia purchased a home from Krasinski. Furia had his own real estate agent, and Kra-sinski employed Jon Douglas Co. as sellers’ brokers. Jon Douglas Co. told Furia the home was approximately 5,500 feet. Furia did not have the home measured. Upon purchase, Furia realized it was roughly 4,500 feet. Furia sued Jon Douglas Co., alleging negligence and negligent misrepresentation in overstating the square footage of the house. The trial court granted summary judgment to defendant Douglas. On appeal, the California Court of Appeal reversed. Noting that the buyer of real estate is entitled to rely on the seller’s broker’s representations, and the broker has a duty to inspect the property before making those representations, the court held that there was a genuine issue of material fact as to whether the size of the house was so obvious that the buyer could be held to be aware of the true condition of the home.